PEOPLE v. WHITE

1. HOMICIDE—MURDER—MANSLAUGHTER—PROVOCATION:
   Sufficiency of provocation to render a homicide manslaughter instead of murder is determined by the facts and circumstances of each case and is for the jury to decide, as is the question of whether there was sufficient time for the blood to cool after a provocation so that a homicide would be murder rather than manslaughter (CL 1948, §§ 750.316, 750.317, 750.321).

2. SAME—MURDER—DEGREE—NEW TRIAL.
   Second-degree murder conviction of a person charged with first-degree murder acts as an acquittal of first-degree murder, and if the second-degree murder conviction is reversed and a new trial ordered, first-degree murder may not be included in the charge at the new trial (CL 1948, §§ 750.316, 750.317).

Appeal from Kent, Hoffius (Stuart), J. Submitted Division 3 January 8, 1969, at Grand Rapids. (Docket No. 4,495.) Decided January 28, 1969.

Oscar Lee White was convicted of second-degree murder. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Wesley J. Nykamp,* Assistant Prosecuting Attorney, for the people.

*Robert A. Johnnson,* for defendant on appeal.

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide § 290.
[2] 40 Am Jur 2d, Homicide §§ 542, 543.

PER CURIAM. Defendant-appellant, Oscar Lee
White, was found guilty by a jury of second-degree
murder[1] and sentenced to a prison term of 12-1/2 to
25 years.

From the record[2] it appears that on the night of
May 18, 1966, defendant was in the Limelite Bar
in Grand Rapids. He was playing pocket billiards
and during the course of the game, he used some
obscene and profane language. He was called to the
bar by the bartender and reprimanded for his in-
discretion. While he was standing at the service
area of the bar, he was approached by the victim,
James Perry, who, apparently without provocation,
struck the defendant on the right occipital area of
his head knocking him to the floor where another
blow or blows were inflicted. A fight ensued which
continued until the bartender separated the com-
batants; both parties left the premises. The affray
resumed outside of the bar, but five to ten minutes
later, White and Perry came back into the bar. De-
fendant then left the bar and approximately 30 min-
utes thereafter he returned, re-entering the bar by
way of the rear entrance. The defendant had a
rifle in his hands which he held horizontally.

A shot was fired while the deceased was approxi-
mately 12 to 15 feet from the defendant. A woman
grabbed the defendant from behind and said: "don't
shoot. Don't kill him." The gun discharged a sec-
ond time; one witness testified that the second shot
was fired while the woman was holding the defend-
ant from behind; the woman, however, testified that
she had released the defendant before the gun dis-
charged. The woman also testified that she saw
blood on the victim's shirt at about chest level before

---

[1] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).

[2] The trial transcript filed with the Court of Appeals contains
numerous ink-pen jottings and also ink marking of entire lines. This
practice is frowned upon and should not be pursued.

the second shot was fired. The victim died 3 days later of complications brought on by the wound.

The single issue raised on appeal is, did the trial court commit error in instructing the jury?

The trial court, following generally an instruction appearing in the case of *People* v. *Hull* (1891), 86 Mich 449, 458, 459 charged the jury with regard to provocation:

"If death be inflicted with a deadly weapon, the provocation must be great to reduce the offense to manslaughter, and to make it manslaughter it is also necessary that the killing be done immediately upon the happening or provocation. If sufficient time elapses for passion to subside and reason to appear, the killing is deliberate, no matter how great the earlier provocation.

"In determining whether the provocation is sufficient to reduce the offense, if any, from murder to manslaughter ordinary human nature or the average of men should be taken as a standard. The provocation will be deemed adequate if it would arouse the passion of a man of average mind or disposition."

The foreman of the jury asked the trial judge the following questions during the deliberation:

"Is it possible to obtain your written definition of all the elements of murder and manslaughter? If not, would you clarify a point that I will ask you in the court room regarding a lapse of time after provocation constituting malice.

\* \* \*

"See, what is bothering us now, the first time you defined everything you mentioned something about provocation and malice, some time element, if you will go right back from there. \* \* \*

"The point was brought up, your Honor, about the provocation occurring immediately after the act. How long a length of time for passion to subside?"

In response the trial judge repeated his instructions on provocation as set forth above. Defense counsel properly registered his objection stating:

"It's my understanding of the law that. the adequacy of the provocation is determined by the facts and circumstances and it is a question of fact whether or not the provocation was adequate, and this is up to the jury, and the time element also as to whether the blood could cool is also up to the jury and they should be so instructed that this is—can be a greater period of time than immediately upon the provocative act."

The word "immediately" is defined as without interval of time. Black's Law Dictionary (4th ed), p 884; Webster's New International Dictionary (3d ed), p 1129. Here it is undisputed that there was at least a 15-minute interval. Thus the charge of the trial court removed from determination by the jury the possibility of mitigation from murder to manslaughter by provocation.

Defense counsel's understanding of the law is well supported by the early Michigan case of *Maher* v. *People* (1862), 10 Mich 212, 222, 223, where it was held that the question of whether reasonable time had elapsed for passion to cool was for the jury. Mr. Justice Christiancy there stated:

"The passion excited by a blow received in a sudden quarrel, though perhaps equally violent for the moment, would be likely much sooner to subside than if aroused by a rape committed upon a sister or a daughter, or the discovery of an adulterous intercourse with a wife; and no two cases of the latter kind would be likely to be identical in all their circumstances of provocation. No precise time, therefore, in hours or minutes, can be laid down by the court, as a rule of law, within which the passions must be held to have subsided and reason to have

resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown, at all, in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case; and where the law has not defined, and can not without gross injustice define the precise time which shall be deemed reasonable, as it has with respect to notice of the dishonor of commercial paper. In such case, where the law has defined what shall be reasonable time, the question of such reasonable time, the facts being found by the jury, is one of law for the court; but in all other cases it is a question of fact for the jury."

*People* v. *Hull, supra,* contains essentially the charge given by the trial judge; however, that decision did not pass upon the charge itself because the conviction of defendant Hull was reversed on other grounds. There are no other Michigan cases which support the instruction.

Reversed and remanded for a new trial at which the defendant shall not again be tried for first degree murder, the jury's verdict having acquitted him of that offense. *People* v. *Farrell* (1906), 146 Mich 264; *People* v. *Gessinger* (1927), 238 Mich 625; *Green* v. *United States* (1957), 355 US 184 (78 S Ct 221, 2 L Ed 2d 199, 61 ALR2d 1119).

LEVIN, P. J., and HOLBROOK and DANHOF, JJ., concurred.