PEOPLE v FIELDS

1. HOMICIDE—FIRST-DEGREE MURDER—INSTRUCTIONS TO JURY—EVIDENCE—PREMEDITATION—SECOND LOOK—PRIOR RELATIONSHIP—WEAPONS—PAST CONDUCT.

A jury instruction on first-degree murder is proper where: (1) taking the evidence in a light most favorable to the state, there was any evidence from which the jury could reasonably infer premeditation, and (2) where there was sufficient time to allow the defendant an opportunity for a second look prior to the shooting; also to be considered are the prior relationship between the parties establishing motive, whether the weapon was obtained in preparation for the homicide, the immediate circumstances of the killing, and defendant's post-homicide conduct.

2. HOMICIDE—INSTRUCTIONS TO JURY—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—MANSLAUGHTER—REQUEST OF COUNSEL—PRESERVING QUESTION—MISCARRIAGE OF JUSTICE.

Jury instructions are to be considered in their entirety, not by isolated excerpts, and where no objection to an instruction is made, the Court of Appeals will reverse only if there has been a miscarriage of justice; therefore instructions to a jury that the difference between murder in the first degree and murder in the second degree is that in first-degree murder there must be a premeditation and deliberation and such a lapse of time as will give the mind time to calculate the purpose and intent of the killing, and that to reduce second-degree murder to manslaughter it is necessary that the killing be done immediately upon the happening of the provocation, where those particular instructions were requested by defense counsel and not later objected to by him, and where considered with other references to first-degree murder and the interval of time between provocation and the killing, were sufficient, and no miscarriage of justice occurred.

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 40 Am Jur 2d, Homicide § 482 *et seq.*
[4] 40 Am Jur 2d, Homicide § 568 *et seq.*

3. CRIMINAL LAW—DIMINISHED MENTAL CAPACITY—INSTRUCTIONS TO
JURY—SPECIFIC INTENT—ADEQUATE INSTRUCTIONS—REQUESTED
INSTRUCTIONS.

Evidence of diminished mental capacity is admissable as it relates
to a defendant's ability to form the specific intent necessary to
commit a particular crime, and an instruction to a jury on
diminished capacity which was adequate to convey to them the
applicable standards on diminished legal capacity was adequate
even though an instruction proposed by defendant may have
been preferable.

4. CRIMINAL LAW—ASSAULT—SPECIFIC INTENT—PROSECUTORS—BUR-
DEN OF PROOF—INFERENCE—CIRCUMSTANTIAL EVIDENCE.

Assault with intent to commit murder is a specific intent crime
and the prosecution must prove beyond a reasonable doubt that
the defendant possessed the specific intent or that he aided and
abetted in the perpetration of the crime, knowing that his co-
participant had the necessary specific intent; intent may be
inferred by the jury from circumstantial evidence.

Appeal from Genesee, Ollie B. Bivins, J. Submit-
ted June 6, 1975, at Lansing. (Docket Nos. 20097,
20098.) Decided September 10, 1975.

Andre Fields was convicted of second-degree
murder and two counts of assault with intent to
commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, and *Donald A. Kuebler,*
Chief, Appellate Division, for the people.

*James W. Lang,* for defendant on appeal.

Before: BASHARA, P. J., and J. H. GILLIS and
M. F. CAVANAGH, JJ.

J. H. GILLIS, J. Defendant was found guilty by a
jury of second-degree murder, contrary to MCLA
750.317; MSA 28.549, and two counts of assault
with intent to commit murder, contrary to MCLA

750.83; MSA 28.278. He was sentenced to three identical concurrent terms of 20 to 40 years in prison and appeals as of right.

A brief discussion of the facts is necessary for an understanding of this case. On February 12, 1973, Samuel Curry and Jackie Terry ran into the defendant, Andre Fields, on the street. Curry testified at trial that he had loaned money to Fields on several occasions, which Fields refused to repay. This apparently was the cause of the argument which ensued, culminating in a fighting incident between Andre Fields and Jackie Terry. Curry testified that Andre Fields pulled a knife, and that he, Curry, also pulled a knife and cut at Fields. The incident broke up with the defendant telling Curry that he "would be back".

Thereafter, Samuel Curry, Jackie Terry and Gregory Spottsville went to the Davis Food Center where Curry and Terry were employees. Approximately 10 to 20 minutes later, the defendant, Andre Fields, and his brother, Cyrano Fields, entered the Davis Food Market, armed with a shotgun and a pistol respectively. Iva Davis, the proprietor of the grocery store, was also present, as was Richard Spottsville, Gregory's brother.

Cyrano Fields went directly to Samuel Curry and asked him "if he was ready to die". He then pointed the pistol at Curry and shot him. At about the same time defendant Andre Fields shot Jackie Terry and Gregory Spottsville. Jackie Terry died from the shotgun wound to his chest.

Defendant was charged with first-degree murder, contrary to MCLA 750.316; MSA 28.548, in the killing of Jackie Terry, and assault with intent to commit murder in the shooting of Gregory Spottsville. He was also charged with assault with intent to commit murder in the shooting of Samuel Curry as an aider and abettor.

Defendant's first assignment of error is that the evidence produced at trial was not sufficient to warrant instructing the jury on first-degree murder. We do not agree. This issue was considered recently in the case of *People v Berthiaume,* 59 Mich App 451, 229 NW2d 497 (1975), where the following standard of review was set forth:

"[W]e must determine (1) whether taking the evidence in a light most favorable to the state, there was *any* evidence from which a jury could reasonably infer premeditation and (2) whether there was sufficient time to allow the defendant an opportunity for a 'second look' prior to the shooting." 59 Mich App at 456.

Also to be considered are the following matters: the prior relationship between the parties establishing motive, whether the weapon was obtained in preparation for the homicide, and the immediate circumstances of the killing and defendant's post-homicidal conduct. *People v Gill,* 43 Mich App 598, 602–603; 204 NW2d 699 (1972), *People v Morrin,* 31 Mich App 301, 324; 187 NW2d 434, 446 (1971).

Applying these criteria to the case at bar, we believe that there was sufficient evidence to merit instructing the jury on first-degree murder. It should be recalled that after the encounter on the street between the defendant and Curry and Terry, the defendant told Curry he "would be back". Defendant could have stayed away after this encounter, but instead, he and his brother returned, both bearing firearms. Viewing this evidence in the light most favorable to the prosecution, it is possible to infer that this activity evidenced premeditation or the conception of a design or plan to kill.

Defendant's next assignment of error is that the

trial court erred in that its instructions to the jury pertaining to first-degree murder were vague and incomplete, in that the terms "premeditation" and "deliberation" were not elaborated upon. The jury was instructed thusly:

"Murder is divided, as we have said, into two degrees —first and second degree. The difference between murder in the first degree and murder in the second is that in murder in the first degree there must be a premeditation and deliberation and such a lapse of time as will give the mind time to calculate the purpose and intent of the killing."

We have reviewed this instruction and the other references to first-degree murder in the instructions and find that it is adequate under *People v Bodley,* 38 Mich App 27, 31; 195 NW2d 803 (1972). It should be noted, also, that the particular instruction on first-degree murder was requested by defense counsel and not later objected to by him. We find no miscarriage of justice.

Next defendant contends that the trial court erred in its instructions to the jury on manslaughter. The instruction objected to in this instance is similar to the one that was rejected by another panel of this Court in *People v White,* 15 Mich App 527, 529; 166 NW2d 639 (1969). However, we feel that this case is somewhat different from *White.* In this case the judge instructed the jury as follows:

"If a man kills another suddenly and without provocation, the law implies malice and it is murder. If the provocation was such as must have greatly provoked him, the killing would be manslaughter only.

"The instrument with which the killing was done may be taken into consideration. If inflicted with a deadly weapon, the provocation must be great to make

it manslaughter. The amount of resentment must bear a reasonable proportion to the provocation to reduce the offense to manslaughter. To make it manslaughter, it is also necessary that the killing be done immediately upon the happening of the provocation. If sufficient time elapses for passion to subside and reason to interpose, the killing is deliberate and the crime murder no matter how great the provocation.

\* \* \*

" \* \* \* if the element of malice is absent and the killing was committed under the influence of passion, or in the heat of blood produced by an adequate or reasonable provocation, or before a reasonable time had elapsed for the blood to cool, and as the result of temporary excitement by which the control of reason was disturbed, the offense is manslaughter and not murder."

At the outset it should be noted that these instructions were part of the instructions requested by defense counsel and were not objected to by him. In *White, supra,* the instruction was objected to when the jury requested a clarification "regarding a lapse of time after provocation constituting malice". 15 Mich App at 529.

Since in this case there was no objection to the instruction, we will only reverse if there has been a miscarriage of justice. MCLA 769.26; MSA 28.1096, *People v Bodley, supra,* 38 Mich App at 30.

Jury instructions are to be considered in their entirety, not by isolated excerpts. *People v Frank Johnson,* 58 Mich App 1; 226 NW2d 730 (1975), *People v Hodo,* 51 Mich App 628; 215 NW2d 733 (1974), *People v Roberson,* 44 Mich App 105; 205 NW2d 50 (1972).

The term "immediately" has been defined as "without interval of time" or "without delay". Black's Law Dictionary (4th ed), p 884, Webster's

Third New International Dictionary, p 1129. While it is true that the use of the term "immediately", standing alone, would seem to preclude any interval of time between the provocation and the killing, the instructions must be read as a whole.

The very next sentence in the instructions talks in terms of "sufficient time elaps[ing] for passion to subside and reason to interpose". Further on in the instructions the trial judge spoke in terms of "a reasonable time * * * for the blood to cool". Reading the instructions together, we do not believe that there was a miscarriage of justice.

Defendant's fourth assignment of error is that the trial court erred in refusing to give the instruction requested by defendant on diminished mental capacity. The trial court did, however, give the following instruction:

"In determining whether an intention essential to a crime, or premeditation and deliberation of an intention to kill, has been proven beyond a reasonable doubt to have existed or occurred, you should consider all of the evidence regardless of which party produced it and all of the surrounding circumstances, including any evidence of a substantially reduced mental capacity of the defendant, and of anything else affecting his mental state. You must consider what affects, if any, his mental capacity, if diminished, had on his ability to form any of the specific mental states that are essential to the crimes charged, or the included offenses. When a specific mental state, such as an intent to kill, is essential to a particular crime, that particular crime cannot be committed unless such mental state existed. If it did not exist because of reduced mental capacity, or for any other reason, that crime was not committed. However, if that mental state did exist, and the other elements of the crime have also been proven beyond a reasonable doubt, then that crime was committed, and a substantially reduced intelligence because of a deficiency of mental capacity or the effect of any substance upon the

brain not amounting to insanity would be no defense to that crime."

Defendant was described by a psychologist at trial as having an IQ of 68, which represented a mild retardate level of intelligence. He was also described by a psychiatrist as having a mild mental deficiency and functioning at the level of a 10 or 11-year-old, although he was 19 years of age. Such evidence of diminished capacity is admissible as it relates to defendant's ability to form the specific intent necessary to commit a particular crime. *People v Lynch,* 47 Mich App 8; 208 NW2d 656 (1973).

Our review of the instruction given leads us to conclude that it was adequate to convey to the jury the applicable standards on diminished legal capacity. Defendant's proposed instruction may have been preferable, but that is not the question here. We find no error in this regard.

Defendant's final assignment of error is that the trial court erred by failing to inform the jury on the requisite intent necessary to find defendant guilty of aiding and abetting another in the commission of the crime of assault with intent to commit murder.

This assignment of error has to do with the jury's finding that defendant was guilty as an aider and abettor to his brother Cyrano's assault with intent to commit the murder of Sam Curry, in violation of MCLA 767.39; MSA 28.979.

Assault with intent to commit murder is a specific intent crime. *People v Phillips,* 37 Mich App 242, 245; 194 NW2d 501 (1971). Therefore, the prosecution must prove beyond a reasonable doubt that the defendant possessed the specific intent or that he aided and abetted in the perpetration of

the crime, knowing that his co-participant had the necessary specific intent. *People v Sharp,* 57 Mich App 624, 626; 226 NW2d 590 (1975). This intent may be inferred by the jury from circumstantial evidence. *People v Wright,* 44 Mich App 111; 205 NW2d 62 (1972). See also *People v Palmer,* 392 Mich 370, 378–379; 220 NW2d 393 (1974).

After reviewing the lengthy instructions relating to assault with intent to commit murder and aiding and abetting, we believe that they adequately explain the principles involved.

Affirmed.