PEOPLE v BAILEY

PEOPLE v BOYD

Docket Nos. 47831, 47832. Submitted November 12, 1980, at Detroit.
—Decided March 3, 1981.

Anthony R. Bailey and Trevor D. Boyd were convicted of kidnap-
ping, armed robbery, assault with intent to commit murder,
and felony-firearm in Lapeer Circuit Court, Martin E. Clem-
ents, J. The defendants appeal, alleging that 1) the trial court
erred in granting the prosecuting attorney's motion to consoli-
date the two cases for trial, 2) at trial, the prosecutor improp-
erly questioned the arresting officers as to the demeanor of the
defendants and the victim just prior to their arrests, 3) there
was insufficient evidence of specific intent to support their
convictions of assault with intent to murder, 4) the trial court's
answer to the jury's inquiry whether the gun was loaded when
it was taken from the alleged victim was improper, 5) the trial
court erred in admitting into evidence seven .38-caliber bullets
found in the defendants' motel room, and 6) the defendants'

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 82.
  5 Am Jur 2d, Appeal and Error § 778.
  State court order granting or denying consolidation, severance, or
    separate trials, appealability of. 77 ALR3d 1082.
[2] 7 Am Jur 2d (Rev), Attorneys at Law § 49.
[3] 21 Am Jur 2d, Criminal Law § 130.
[3, 10, 11] 21 Am Jur 2d, Criminal Law § 183.
  Construction and application of provision of Omnibus Crime Con-
    trol and Safe Streets Act of 1968 (18 USCS § 924(c)) that person
    who uses firearm to commit, or carries firearm unlawfully during
    commission of, federal felony, shall be sentenced to term of
    imprisonment in addition to punishment provided for such felony.
    25 ALR Fed 678.
[4] 29 Am Jur 2d, Evidence §§ 640, 644, 708.
[5] 6 Am Jur 2d, Assault and Battery § 11.
  40 Am Jur 2d, Homicide § 578.
[6] 5 Am Jur 2d, Appeal and Error § 838.
[7] 5 Am Jur 2d, Appeal and Error §§ 601, 602.
[8] 29 Am Jur 2d, Evidence §§ 251-254.
[9] 75 Am Jur 2d, Trial § 260.

conviction of felony-firearm violates their right to be free of double jeopardy. Defendant Boyd also alleges that he was improperly convicted of felony-firearm as an aider and abettor. *Held:*

1. Michigan law strongly favors joint trials. The defendants were not prejudiced in a joint trial by the admission into evidence of their statements to the police which were inconsistent with their trial testimony since such impeachment could have occurred without the consolidation. Neither of the defendants' statements nor trial testimony had any tendency to incriminate the other defendant.

2. The defendants were not prejudiced by sharing the same counsel.

3. Defendant Boyd was not improperly convicted of felony-firearm since an aider and abettor need not have possession of the firearm to be convicted under the felony-firearm statute.

4. No error occurred when the prosecutor explored the defendants' statements and demeanor just before their arrest. The prosecutor did not impermissibly use the defendants' right to silence against them.

5. There was sufficient evidence to justify the jury's verdict as to finding the specific intent element of assault with intent to murder.

6. There was no error occasioned by the trial judge's answer to the jury's question which inquired whether the gun was loaded when it was taken from the alleged victim.

7. The admission into evidence of the .38-caliber bullets found in the defendants' motel room did not result in manifest injustice to the defendants. The bullets were relevant to the defendants' claim that they were trying to sell the gun to the victim when he held them up with it. The prosecutor's closing argument regarding the bullets is, likewise, not cause for reversal.

8. The defendants' conviction of felony-firearm as well as the underlying crime upon which the felony-firearm charge is based does not violate their right to be free from double jeopardy.

Affirmed.

Bronson, P.J., concurred in part and dissented in part. He concurred with the majority in all respects except that he considers personal possession of the firearm a prerequisite to a conviction under the felony-firearm statute. He would vacate defendant Boyd's felony-firearm conviction.

Opinion of the Court

1. Criminal Law — Joint Trials — Appeal.

A decision by a trial court to join or consolidate two criminal cases will not be reversed on appeal absent a showing of prejudice to substantial rights of the accused.

2. Criminal Law — Shared Counsel.

The sharing of counsel by two codefendants is not per se prejudicial.

3. Criminal Law — Felony-Firearm — Aiders and Abettors — Statutes.

An aider and abettor need not have possession of a firearm to be convicted under the felony-firearm statute (MCL 750.227b; MSA 28.424[2]).

4. Criminal Law — Evidence — Defendant's Silence.

Testimony regarding a defendant's silence may not be offered into evidence as part of the res gestae of the offense.

5. Assault and Battery — Assault With Intent to Murder — Specific Intent Crime — Statutes.

Assault with intent to murder is a specific intent crime; proof of specific intent requires proof beyond a reasonable doubt that the defendant possessed the specific intent or that he aided and abetted in the perpetration of the crime, knowing that his coparticipant had the necessary specific intent (MCL 750.83; MSA 28.278).

6. Criminal Law — Appeal.

The Court of Appeals must consider whether the evidence presented was sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt in determining whether a conviction was based on sufficient evidence.

7. Criminal Law — Appeal — Preserving Question.

Reversal of a conviction is not required because of the admission of certain evidence in the absence of a finding of manifest injustice where defense counsel had failed to object to the introduction of the allegedly prejudicial evidence.

8. Evidence — Relevant Evidence — Rules of Evidence.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice (MRE 401, 403).

9. PROSECUTING ATTORNEYS — CLOSING ARGUMENTS.

The prosecuting attorney may draw reasonable inferences and conclusions from the evidence in his closing argument.

10. CRIMINAL LAW — FELONY-FIREARM — DOUBLE JEOPARDY — STATUTES.

Conviction under the felony-firearm statute as well as conviction of the underlying offense upon which the felony-firearm charge is based does not violate a defendant's right to be free of double jeopardy (MCL 750.227b; MSA 28.424[2]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY BRONSON, P.J.

11. CRIMINAL LAW — FELONY-FIREARM — STATUTES.

*Personal possession of a firearm is a prerequisite to conviction under the felony-firearm statute (MCL 750.227b; MSA 28.424[2]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Earl H. Morgan, Jr.,* Prosecuting Attorney, and *John G. Strand,* Senior Assistant Prosecuting Attorney, for the people.

*Ronald B. Shamblin,* for defendant on appeal.

Before: BRONSON, P.J., and J. H. GILLIS and CYNAR, JJ.

J. H. GILLIS, J. Defendants were charged in a four-count information with kidnapping, MCL 750.349; MSA 28.581, armed robbery, MCL 750.529; MSA 28.797, assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). Both defendants were convicted on all four charges. Defendant Bailey was sentenced to three concurrent terms of imprisonment of 13 to 40 years, as well as the mandatory 2-year consecutive sentence on the felony-firearm conviction. Defendant Boyd was sentenced to three concurrent terms of imprisonment of 18 to 40 years, plus the mandatory 2-year term

for the felony-firearm conviction. Defendants appeal as of right.

The bare-bones facts gleaned from the record are as follows. On January 1, 1979, Alphonzo Bowe, Jr., had stopped at a McDonald's in Flint before returning to Detroit from his parents' home. While in the restaurant, Bowe agreed to give the defendants a ride to their motel in return for $2. However, as Bowe was driving to the motel, Bailey put a .38-caliber derringer to Bowe's head, and Boyd said that he, too, was armed.

During the ensuing ride Bowe was told to move over to the passenger seat and let Boyd drive. Bailey was still sitting in the back seat with the gun to Bowe's head. Bailey removed $26 from Bowe's pocket and, during a fight for the gun, Boyd choked Bowe. After the fight, Bailey stated several times that the gun was jammed.

At some point, the car was pulled onto the shoulder of a local expressway. When a state police car pulled up behind Bowe's car minutes thereafter, Boyd exited from the car and told Trooper Bohnett that everything was fine. However, Bohnett noticed that a scuffle had just started in the car, and heard one of the occupants yelling about a gun. Bohnett grabbed Boyd, spun Boyd around in front of him, and pulled his gun. Trooper Wilson opened the passenger door, after drawing his gun, and Bowe exited from the car screaming that he had been robbed and needed help.

Wilson spun Bowe around and Bohnett heard a gun hit the roof of the car. Wilson took the gun from Bowe, who had apparently wrested it from Bailey during the scuffle in the car. Bohnett then drew a second gun and aimed it at Bailey, who was still in the car. Although Bowe continued to

say that he had been robbed, neither Bailey nor Boyd moved or said anything, until Boyd yelled that he had been robbed and Bailey agreed.

Initially, all three individuals were taken into custody and searched. The .38 derringer was identified as being registered to Boyd's stepmother. Two .38-caliber shells were found in the gun. Bowe had $2 or $3 and some change in his pants pocket, Bailey had $10.35, and Boyd had a total of $42.20; $16.20 in one pocket and $26 in another pocket. In the vehicle, which was searched with Bowe's consent, Wilson found two .38-caliber shells and five $1 bills on the floor. A motel maid found seven .38-caliber shells in the room assigned to defendants when they registered on January 1, 1979.

After they were arrested, Bowe made a statement consistent with the above facts, adding only that he started the scuffle with Bailey while Boyd was talking with Bohnett, in order to get the trooper's attention. After waiving their *Miranda*[1] rights, Bailey and Boyd stated that they had asked Bowe for a ride to the motel and had been held up shortly after Bowe began driving towards the motel. Later, Boyd said he could not remember what happened after he and Bailey entered the vehicle. Although each defendant made his statement in the absence of the other, testimony indicated that they had spoken together for several minutes just before talking to the police. During this conversation, the two agreed on the substance of their statements.

At trial, Boyd testified substantially as follows. Boyd stated that he had been given the gun by Bailey's stepsister, in order that he might sell it. When he and Bailey had been driven to the motel

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

by Bailey's father, Boyd left the gun near a tree in Bailey's front yard. Later that evening, he hitch-hiked back to the Bailey home in order to get the gun. The person who gave Boyd a ride to Bailey's house was Bowe. During that ride Bowe suggested that he might be willing to buy the gun, and agreed to meet Boyd and Bailey at the McDonald's as soon as he (Bowe) got the money needed to make the purchase. Thereafter, Boyd and Bailey met Bowe at the McDonald's and drove with him to find an isolated area in which Bowe might try shooting the gun. During the ride, Bowe asked Boyd to drive so that Bowe might examine the derringer. When Boyd pulled onto the shoulder of the expressway, at Bowe's request, Bowe brandished the loaded pistol and told Bailey and Boyd to get out of the car. Just at that moment the state police car pulled up behind Bowe's car. Bailey's trial testimony corroborated Boyd's testimony.

Defendants raise seven issues on appeal. They will be briefly discussed *seriatim.*

## I

Defendants first challenge the trial court's decision to grant the prosecutor's motion to consolidate the two cases for trial.

Michigan law strongly favors joint trials. MCL 768.5; MSA 28.1028, *People v Slate,* 73 Mich App 126, 127; 250 NW2d 572 (1977). A decision to join or consolidate two cases will not be reversed on appeal "in the absence of a showing of prejudice to substantial rights of the accused". *People v Schram,* 378 Mich 145, 156; 142 NW2d 662 (1966).

Defendants claim that they were prejudiced at trial by the admission into evidence of their statements to the police which were inconsistent with

their trial testimony. We find no prejudice. The pretrial statements were substantially identical, as was each defendant's trial testimony. Even if the defendants were impeached by their own prior inconsistent statements, such impeachment could have occurred without the consolidation. Neither of the defendants' statements nor trial testimony had any tendency to incriminate the other defendant.

Because shared counsel is not per se prejudicial, *People v Tillman,* 59 Mich App 768, 770; 229 NW2d 922 (1975), *People v Perna,* 23 Mich App 507, 509; 179 NW2d 43 (1970), we likewise reject defendants' claim in that regard. Certainly, counsel's failure to highlight defendant Boyd's status as an aider and abettor is irrelevant. See, MCL 767.39; MSA 28.979, which abolishes the distinction between accessories and principals.

## II

Defendant Boyd's claim that he was improperly convicted of felony-firearm is likewise rejected. An aider and abettor need not have possession of the firearm to be convicted under MCL 750.227b; MSA 28.424(2). *People v Tavolacci,* 88 Mich App 470, 473-474; 276 NW2d 919 (1979), *lv gtd* 407 Mich 882 (1980).

## III

At trial, the prosecutor questioned the arresting officers as to the "demeanor" of the defendants and the victim just prior to their arrests. Both officers testified that as soon as they approached the car Bowe immediately and excitedly stated that he had been robbed. The defendants, on the other hand, had initially remained silent and

calm. Defendants claim on appeal that such testi-
mony, coupled with the prosecutor's closing argu-
ment stressing the officers' recollections, was noth-
ing but an attempt to use the defendants' silence
against them.

The prosecutor excuses the testimony and argu-
ment thereon because the questions were designed
to explore all of the facts and circumstances sur-
rounding the offenses. He cites *People v Savage,*
225 Mich 84, 86; 195 NW 669 (1923), in support of
his position:

"It is elementary that the acts, conduct and de-
meanor of a person charged with crime at the time of,
or shortly before or after the offense is claimed to have
been committed, may be shown as part of the *res
gestae.*"

A review of the cases which have relied on this
portion of *Savage* reveals that no case has yet
applied the rule to a defendant's silence. Indeed,
the Supreme Court has clearly stated that testi-
mony as to a defendant's silence may not be
offered into evidence as part of the res gestae of an
offense. *People v Bobo,* 390 Mich 355, 361; 212
NW2d 190 (1973). See, also, MRE 801(d)(2)(B).

Contrary to defendants' contention, however, the
prosecutor did not impermissibly use the defen-
dants' right to silence against them. Rather, the
prosecutor's questions, the witnesses' answers, and
the prosecutor's closing argument focused on the
fact that the alleged victim was the first of the
three to state that a robbery had taken place or
was in progress. The record clearly reveals that,
after Bowe's statement, one or both of the defen-
dants stated that Bowe had robbed them and that
they then were told to be quiet by the officer who
had his gun aimed at them. We thus conclude that

no error occurred when the prosecutor explored the defendants' statements and demeanor just before their arrest. Certainly, this testimony was relevant to the defendants' claim that they were the robbery victims.

## IV

Assault with intent to murder, MCL 750.83; MSA 28.278, is a specific intent crime. *People v Fields,* 64 Mich App 166, 173; 235 NW2d 95 (1975), *People v Phillips,* 37 Mich App 242, 245; 194 NW2d 501 (1971). Defendants argue here that there was insufficient evidence of the specific intent element to support their convictions of assault with intent to murder.

In determining whether a conviction was based on sufficient evidence, this Court must consider whether the evidence presented was sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 366, 368; 285 NW2d 284 (1979).

Proof of specific intent requires proof "beyond a reasonable doubt that the defendant possessed the specific intent or that he aided and abetted in the perpetration of the crime, knowing that his coparticipant had the necessary specific intent". *Fields, supra,* 173-174. The required intent may be inferred by the jury from circumstantial evidence. Fields, supra, 174.

A review of the trial testimony reveals sufficient evidence to justify the jury's verdict. In particular, we specifically recall Bowe's testimony that: (1) Bailey pulled a gun, held it to Bowe's head, and cocked it; (2) Boyd told Bowe that he had a gun as well; (3) Bailey told Bowe that if Bowe tried anything Bailey would kill him; (4) during a scuffle for

the gun, Boyd grabbed Bowe's throat and choked him; (5) subsequently, Bailey repeatedly stated that the gun was jammed; and (6) when the police approached the car, Bailey told Bowe he would kill Bowe if Bowe tried to say anything. Thus, we find no error.

## V

Defendants also question the propriety of the judge's answer to the jury's inquiry whether the gun was loaded when it was taken from the alleged victim. The question was asked after the jury had begun deliberating and was answered as follows;

"The answer to that is that Officer Daniel Bohnett testified that the gun was loaded when he took it into his custody."

Defendants claim that the judge's answer left the jury with the impression that, as a matter of fact, the gun was loaded. We disagree. There was nothing in the answer which indicated that the jury was obliged to accept Officer Bohnett's testimony as true. All the judge did was impart to the jury the substance of the officer's testimony on the issue. If the jury's question had been answered "yes" or "no", the issue would be different. Likewise, if the trial court had misstated the substance of the officer's testimony, serious consideration of the question would be required. As it is, we see no error in the answer which was given.

## VI

Defendants also claim error in the admission

into evidence of seven .38-caliber bullets found in defendants' motel room. Because defense counsel made no objection to the introduction of this evidence, reversal is not required absent a finding of manifest injustice. *People v Stinson,* 88 Mich App 672, 674; 278 NW2d 715 (1979).

The basis for defendants' claim is that the bullets were not relevant to their guilt or innocence but they were highly prejudicial. MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice". MRE 403.

In this case, the bullets were relevant to the defendants' claim that they were trying to sell the gun to Bowe when he held them up with it. If the defendants had actually intended to sell the gun, it is unlikely that they would have kept seven bullets. Thus, the evidence made the truth of their story less likely than it would have been without the evidence. Certainly, there is no reason to conclude that the admission into evidence of the bullets resulted in manifest injustice to defendants.

The prosecutor's closing argument with regard to the bullets is likewise not cause for reversal. The prosecutor is allowed to draw reasonable inferences and conclusions from the evidence. *People v Wright,* 58 Mich App 735, 746; 228 NW2d 807 (1975). Even if some remarks were arguably improper, defendants have failed to demonstrate that any possible prejudice could not have been cured by a timely objection and a proper instruction.

*People v Hall,* 396 Mich 650, 654-656; 242 NW2d 377 (1976).

## VII

The felony-firearm statute, MCL 750.227b; MSA 28.424(2), has been upheld in the face of a double jeopardy attack. *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979). We thus reject defendants' claim in this regard.

Affirmed.

CYNAR, J., concurred.

BRONSON, P.J. *(concurring in part and dissenting in part).* I concur with the majority in all respects except as to part II of their opinion. I believe that personal possession of the firearm is a prerequisite to a conviction under MCL 750.227b; MSA 28.424(2). See my opinion in *People v Bridges,* 98 Mich App 436, 439-440; 296 NW2d 275 (1980).

I would vacate Boyd's felony-firearm conviction.