PEOPLE v GRIFFIN

Docket No. 47373. Submitted January 15, 1981, at Detroit.—Decided
    August 18, 1981. Leave to appeal denied, 412 Mich 878.
    Jack A. Griffin was convicted of first-degree murder and assault
        with intent to murder, Monroe Circuit Court, James J. Kelley,
        J. Defendant appeals, alleging several errors in the trial court's
        instructions to the jury. *Held:*
        1. The trial court erroneously instructed the jury that the
        law implies malice from an unprovoked, unjustified, inexcusa-
        ble killing without mitigating circumstances.
        2. The trial court's instructions on specific intent were
        proper.
        3. There was sufficient evidence to lead a finder of fact to
        conclude that first-degree murder was committed.
        Reversed and remanded for retrial on the original charge, at
        the discretion of the prosecutor.
        BRONSON, J., concurred in part and dissented in part. He
        agrees that the trial court's instruction regarding malice was
        erroneous and requires reversal. Judge Bronson would find that
        the court's instructions regarding intent as an element of
        murder were incorrect and could have confused the jury, and
        also that the court's instructions could have left the jury with
        the impression that they could not consider lesser offenses
        unless they all agreed on the defendant's innocence of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide § 500.
    75 Am Jur 2d, Trial § 719.
[2] 40 Am Jur 2d, Homicide § 50.
[3] 40 Am Jur 2d, Homicide § 569.
[4] 40 Am Jur 2d, Homicide §§ 45, 53.
[5] 75 Am Jur 2d, Trial § 876 *et seq.*
[6] 75 Am Jur 2d, Trial § 643.
[7] 30 Am Jur 2d, Evidence §§ 1170-1172.
[8, 9] 40 Am Jur 2d, Homicide §§ 44-47, 454.
    Presumption of deliberation and premeditation from the circum-
    stances attending the killing. 96 ALR2d 1435.
    Presumption of deliberation and premeditation from the act of
    killing. 86 ALR2d 656.

greater offense. Further, he would find that there was insufficient evidence of premeditation and deliberation to justify a conviction of first-degree murder. He would, upon remand, allow the defendant to be retried only on the charges of second-degree murder and assault with intent to commit murder.

OPINION OF THE COURT

1. HOMICIDE — MURDER — MALICE — JURY INSTRUCTIONS.

An instruction to the jury in a prosecution for murder that the law implies malice from an unprovoked, unjustified, inexcusable killing without mitigating circumstances is erroneous; malice may be inferred from the facts of a killing but this inference does not rise to the status of a legal presumption.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY BRONSON, J.

2. HOMICIDE — MURDER — MALICE.

*Malice aforethought is the intention to kill, actual or implied.*

3. CRIMINAL LAW — ASSAULT WITH INTENT TO COMMIT MURDER.

*The elements of the crime of assault with intent to commit murder are: (1) an assault; (2) with specific intent to murder; (3) which if successful would make the killing murder.*

4. HOMICIDE — MURDER — INTENT.

*Murder in the first degree requires the existence of a deliberate intention to take life; where a defendant was conscious of a very high risk that his acts would result in the death of another but where there was no intent to kill, he may be found guilty of second-degree murder.*

5. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

*A trial court's instruction to a jury which conditions the jury's right to consider lesser offenses upon a finding of not guilty on the charged offense is erroneous.*

6. CRIMINAL LAW — JURY INSTRUCTIONS — DEFENDANT'S THEORY OF CASE.

*A trial court, in its jury instructions, is not obligated to give verbatim the defense's requested instruction on its theory of the case; however, where there is evidence to support an instruction on the theory advanced, some instruction on that theory must be given.*

7. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE.

*The standard for assessing a defendant's claim of insufficient*

*evidence on an element of the crime charged is whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt, taking the evidence in the light most favorable to the prosecution.*

8. HOMICIDE — MURDER — PREMEDITATION AND DELIBERATION.

*Premeditation and deliberation may be inferred from all of the surrounding circumstances of a killing; factors relevant to whether premeditation and deliberation exist in a particular case include (1) the prior relationship of the parties that would tend to show motive, (2) the acquisition of or positioning of a weapon in preparation for a homicide, (3) the circumstances of the killing itself, and (4) the killer's post-homicide conduct.*

9. HOMICIDE — MURDER — PREMEDITATION AND DELIBERATION.

*No specific length of time is needed to satisfy the premeditation and deliberation element of first-degree murder, rather, it is sufficient that the defendant had an interval of time to subject the nature of his actions to a second look; however, merely because there was time to premeditate and deliberate does not mean that premeditation and deliberation actually occurred; actual cogitation is necessary to satisfy the premeditation and deliberation element of first-degree murder.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: V. J. BRENNAN, P.J., and BRONSON and BASHARA, JJ.

BASHARA, J. The majority concurs with the reasoning and result reached by Judge BRONSON's holding that the trial court's instruction to the jury as to the issue of malice was erroneous and requires reversal. *People v Richardson,* 409 Mich 126, 142-146; 293 NW2d 332 (1980), *People v Wright,* 408 Mich 1, 18-23; 289 NW2d 1 (1980).

However, we specifically reject the balance of the dissenting opinion, both as to rationale and result. For the benefit of the trial judge on retrial, our review leads us to the conclusion that his instructions on specific intent elements of first-degree murder and assault with intent to murder were proper. We further find that the evidence adduced could lead a finder of fact to conclude that first-degree murder was committed.

Reversed and remanded to the trial court for retrial on the original charge, at the discretion of the prosecutor.

V. J. BRENNAN, P.J., concurred.

BRONSON, J. *(concurring in part, dissenting in part).* Following a jury trial in the Monroe County Circuit Court, defendant was convicted of first-degree murder, contrary to MCL 750.316; MSA 28.548, and assault with intent to murder, contrary to MCL 750.83; MSA 28.278. Defendant was sentenced to concurrent terms of life imprisonment for the convictions, and now appeals as of right.

The testimony will be briefly summarized. Defendant stated that on November 25, 1978, he was sitting on his front porch when the victim, William Harmon, drove up looking for Willie Whit, defendant's neighbor. Mr. Harmon hoped that Mr. Whit would help him unload some lumber. Whit was not at home. However, defendant knew Mr. Harmon from seeing him in the neighborhood and agreed to assist in the project.

En route to the unloading site, Harmon stopped at a party store. He gave defendant five dollars, which constituted payment for the job. Defendant purchased a pint of whiskey and a sixteen-ounce bottle of beer.

Defendant Griffin began to drink the whiskey in the pickup truck. At the site, defendant worked on unloading the lumber, and during a rest break finished the whiskey. He then began to drink the beer. However, he could not recall if he finished it. Indeed, other than recollecting that he resumed unloading, defendant Griffin had no further recall of the events in issue.

The sole eyewitness to the killing was Curtis Norris. At approximately 5 p.m. Messrs. Harmon and Griffin arrived at Norris's farm. Norris invited Harmon to pick some recently cut corn. Norris had never seen Griffin before, but could tell that he had been drinking.

The three men got into Norris's pickup truck and drove to the corn field. Norris and Harmon went into the field, but Griffin remained in the truck. While Norris and Harmon were picking the corn, defendant got out of the truck and walked to the driver's side of the vehicle. Mr. Norris yelled to defendant, "[C]ome over here and help pick this corn up and I'll buy you a drink".

At this point, Griffin got into the truck, drove forward some 300 feet, turned and proceeded toward Norris. Mr. Norris, who had two artificial legs, moved to get out of the way and fell down. The truck missed him, and continued on past for a few hundred feet. Norris called Harmon to help him. Meanwhile, the pickup truck turned back towards the men. Harmon was hit directly, and Norris was struck on his hand.

Monroe County Deputy Sheriff Daniel Case testified that he went to the crime scene and examined it for physical evidence. He stated that he paced off a circle made by the truck's tire tracks and that the circumference of the circle was 55 yards. Deputy Case's testimony, then, conflicted with that

of Norris concerning the distances defendant traveled in the truck.

After Harmon was hit, Norris went to his house to get help. On the way he noticed that the pickup truck was empty and lodged in a pile of brush, logs, and trash. Harmon was taken to a hospital, where he died a few hours later.

Approximately an hour and a half after the incident, defendant was seen standing near Norris's house. The police were called and found him lying on the ground, apparently beaten. Griffin was taken to the hospital where a blood test was taken. The parties stipulated that defendant was found to have .318 percent by weight of alcohol in his blood, which would indicate severe alcoholic intoxication.

Defendant Griffin stated that he had never argued with Harmon and had no reason to want to kill him. At the time of trial, Griffin was 45 years of age. He had no prior criminal record, but he did acknowledge a drinking problem.

Defendant contends that a number of instructional errors entitle him to reversal of his convictions. The first problem involves the trial court's malice instructions. The judge charged the jury:

"Fifth and last element of murder of the second degree: that the killing was done with malice aforethought.

"More about malice. If one person without just cause inflicts a wrong upon another, we call him malicious. So when one person without legal provocation, justification, excuse, or mitigation intentionally kills another, we call him a murderer. *The law implies from an unprovoked, unjustifiable, inexcusable killing without mitigating circumstances the existence of that wicked disposition of mind, which the law terms malice aforethought. Malice is implied from any deliberate or cruel act against another person however sudden. The time*

within which the wicked purpose is formed is not material as long as it is formed before the act. Malice aforethought does not imply deliberation or the lapse of considerable time between the formation and execution of the intent to take life, but rather denotes purpose and design. It means malice existing at any time before the killing so as to be its moving cause.

"In determining whether this element existed you may consider the manner in which the killing was done, the instrument used, and all other circumstances." (Emphasis added.)

While a jury could properly draw an inference of malice on the facts of this case, this inference does not rise to the status of a legal presumption. Instructions telling the jury that "the law presumes" or "the law implies" facts of significance to the ultimate outcome of the case are erroneous. The Michigan Supreme Court has so held on several occasions. *Maher v People,* 10 Mich 212, 218 (1862), *People v Martin,* 392 Mich 553, 560-562; 221 NW2d 336 (1974), *People v Wright,* 408 Mich 1, 18-23; 289 NW2d 1 (1980), *People v Richardson,* 409 Mich 126, 142-146; 293 NW2d 332 (1980). See, also, *Sandstrom v Montana,* 442 US 510; 99 S Ct 2450; 61 L Ed 2d 39 (1979), holding that such "presumption" instructions are violative of the Fourteenth Amendment's Due Process Clause.

The prosecution on appeal relies in large part on *People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976), *lv den* 400 Mich 854 (1977). Any precedential value *Rosemary Gibson* once had has been destroyed by *Richardson, supra.* Indeed, the analytical underpinnings upon which this Court distinguished *Rosemary Gibson* from *Martin, supra,* was rejected *sub silentio* by the unanimous Supreme Court in *Richardson.*

Malice aforethought has been defined as the intention to kill, actual or implied. *People v Doss,*

406 Mich 90, 99; 276 NW2d 9 (1979), *People v Morrin,* 31 Mich App 301, 310-311; 187 NW2d 434 (1971), *lv den* 385 Mich 775 (1971). While a jury could reasonably infer the element of malice aforethought from the evidence adduced, it could also have declined to do so. Griffin was severely intoxicated at the time of the incident. Defendant also suffered from poor eyesight, and because he lacked corrective lenses had been unable to obtain a driver's license. Given the totality of the circumstances of this case, it is conceivable that, but for the instruction that the law implies malice, a reasonable juror might have concluded that this element had not been established. The instruction had the potential of substantially diluting the prosecution's burden of proof on malice, while defendant's case was based on a lack of malice. As such, the error cannot be deemed harmless.[1]

Defendant next argues that the trial court's instructions on the specific intent elements of first-degree murder and assault with intent to murder require reversal. The instructions on first-degree murder and specific intent provided in pertinent part:

"If you determine that the People have proved beyond a reasonable doubt all the following elements, then the defendant is guilty of murder of the second

---

[1] Since the trial court's instruction on assault with intent to murder incorporated the previous portion of the charge on murder, it too is erroneous. In *People v Eisenberg,* 72 Mich App 106, 114; 249 NW2d 313 (1976), this Court said:

"'The elements of the crime of assault with intent to commit murder are: (1) an assault; (2) with specific intent to murder; (3) and which, if successful would make the killing murder.' *People v Branner,* 53 Mich App 541, 544; 220 NW2d 183 (1974). See, also, *People v Scott,* 6 Mich 287 (1859)."

If the jury found no malice, the crime of assault with intent to murder would not be established.

degree, but if you do not so determine, then you must find the defendant not guilty of that offense.

"First element: that William Harmon died on or about November 25th, 1978.

"Second element: *that the defendant, Mr. Griffin, caused his death. That is, he did the act which caused his death intending that it result in his death or in great serious bodily injury, or he must have known he created a very high risk of death with knowledge that it probably would cause death.*

"Third element: *that the defendant intended to kill William Harmon.*

"More about intent. Intent, except when stated verbally, is a matter of inference and can be proved only by actions or circumstances because nobody can look into the mind of another person. In determining whether the defendant had the required intent you're to consider all the evidence in the case. In determining the intent with which a person performs an act you may take into consideration the nature of his actions, the temper or disposition of mind with which they were performed, the instrument and means used, his conduct prior to and at the time of the alleged act, and all other circumstances which may throw light upon his intention in doing whatever you find that he did. If you determine that a person knowingly takes action which naturally leads to certain consequences and the consequences occur, you may infer that the person intended the consequences.

\* \* \*

"These five elements are all the elements of murder of the second degree. If you determine that all five of these elements have been proved beyond a reasonable doubt and, also, that the following sixth element has been proved beyond a reasonable doubt, then the defendant is guilty of murder of the first degree, but if you do not find that this sixth element has been proved beyond a reasonable doubt, you cannot find the defendant guilty of murder of the first degree.

*"The sixth element is that the killing was willful, and deliberate, and premeditated.* More about this element.

"To deliberate means to measure and evaluate the

major facets of a choice or problem. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between the initial thought and ultimate action should be long enough to afford a reasonable person time to subject the nature of his response to a second look.

"Premeditated means thought about beforehand.

"Deliberation and premeditation may be inferred from the entire circumstances surrounding a killing. It is not necessary that the deliberation and premeditation should have taken any definite amount of time but only that they preceded the killing.

"*Willful, as used in this law pertaining to first degree murder, means intentional.*" (Emphasis added.)

Murder in the first degree requires the existence of a deliberate intention to take life. *People v Garcia,* 398 Mich 250, 258; 247 NW2d 547 (1976), *People v Burgess,* 96 Mich App 390, 398-399; 292 NW2d 209 (1980). One may be found guilty of second-degree murder, however, where there was no intent to kill. Instead, where defendant was conscious of a very high risk that his acts would result in the death of another, the "intent" requirement of second-degree murder is satisfied. *Burgess, supra,* 396-397.

Defendant contends that the instructions excerpted above were so likely to confuse a jury and lead it to believe that a specific intent to kill was unnecessary to sustain a guilty verdict of first-degree murder that he is entitled to reversal of his conviction. I believe that the instruction as given was an incorrect statement of the law. The first five elements referred to by the trial court explained second-degree murder. As noted previously, second-degree murder does not require an intent to kill. However, the third element referred to by the court specifically indicated that the jury must find "defendant intended to kill William

Harmon". Moreover, this third element actually contradicts in part the second element which accurately explains the malice or intent requirement of second-degree murder.

The element which the trial court refers to as being needed in addition to the elements of second-degree murder to elevate that offense to first-degree murder is proof that the killing was "willful, and deliberate, and premeditated". The court also explained that willful, as used in the law pertaining to first-degree murder, means intentional.

The instructions as given could have confused the jury. Based on the court's "second element", the jurors might have concluded that the defendant's acts resulting in death had to be intentional, premeditated, and deliberated, but that there need be no actual proof of intent to kill to establish first-degree murder.[2] As an example of the problem, under the instructions as given, a jury might conclude that a defendant who threw rocks off a tall building, without an intention to kill, after premeditating and deliberating on the act, could be found guilty of first-degree murder if a pedestrian were killed on the theory that defendant intended to throw the rocks and created a very high risk of death with knowledge of the likely outcome of his actions. See *Burgess, supra,* 397.

Unlike *Burgess,* the erroneous instruction given here is not obviously harmless because proof of an intent to kill was less than overwhelming. If this were the only error, however, I would not reverse because the totality of the instructions leaves me with little doubt that the jurors understood that

---

[2] Again, the trial court's instructions on assault with intent to murder, which incorporated the definition of murder and intent, could have caused confusion and led to a misapplication of the law.

an actual intent to kill was a prerequisite to a conviction on the charge of first-degree murder.

Defendant next asserts that the trial court's instructions were erroneous because they required acquittal on one charge prior to consideration of another. I agree that the trial court's instructions may have had a tendency to require the jury to acquit on one charge before consideration of another and are thus erroneous. In two recent cases, *People v Mays,* 407 Mich 619; 288 NW2d 207 (1980), and *People v West,* 408 Mich 332; 291 NW2d 48 (1980), the Michigan Supreme Court held that a court's instruction which conditioned the jury's right to consider lesser offenses upon a finding of not guilty on the charged offense was erroneous. Here, the court stated in part:

"The third offense included in Count I is manslaughter. If the evidence does not convince you beyond a reasonable doubt that the defendant intended to kill, you must consider whether he acted with an unreasonable disregard for human life. It is sufficient for murder of the second degree if the defendant consciously created a very high degree of risk of death, and if he had knowledge of the probability of those consequences. However, if you find that the defendant's act did not amount to such a criminal purpose aimed against life, you must find the defendant not guilty of murder and must consider whether he is guilty of manslaughter."

The instruction could have left the jurors with the impression that unless all agreed that defendant was not guilty of first-degree murder, second-degree murder could not be considered and that unless all agreed that defendant was not guilty of second-degree murder, manslaughter could not be considered.[3] I do not address the issue of whether

---

[3] It is not error to suggest an order of considering the possible offenses. However, any such instruction should make it clear that

this error could be deemed harmless as defendant's conviction must be reversed anyway.[4]

Defendant next argues that the jury was not adequately instructed on his theory of the case. A trial court is not obligated to give verbatim the defense's requested instruction on his theory of the case. At the same time, however, where there is evidence to support an instruction on the theory advanced, some instruction on the same must be given. *People v Lester,* 406 Mich 252; 277 NW2d 633 (1979). Although the trial court could have given greater attention to the defense theory in its charge, the essence of this theory was conveyed to the jury so that no error occurred.

Defendant also asserts that there was insufficient evidence of premeditation and deliberation to justify submitting the charge of first-degree murder to the jury. Following the close of the prosecution's case, the defense moved to quash the charge, but the trial court denied the motion. Defendant also moved for a new trial after the verdict based on this claim, which was also denied. The standard for assessing this claim is whether there was "sufficient evidence to justify a rational trier of

consideration of the lesser offenses is permissible even though there is no unanimity among the jurors on whether defendant is or is not guilty on the greater charge. A trial court wishing to give an order of consideration instruction would be well advised to use the suggested one appearing in *Mays, supra,* 623, fn 1, and reprinted below:

" 'You should begin your deliberations by considering (the charged offense). Unless all of you agree to find the defendant guilty of (the charged offense), you may consider the other offenses upon which I have instructed you in the order in which the instructions were given. You may consider any of those offenses without having reached agreement concerning the defendant's guilt or innocence of any other of those offenses.' "

[4] In this case, even if all the instructional errors were harmless in and of themselves, I might still reverse based on their number and cumulative effect. *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974), *People v Skowronski,* 61 Mich App 71, 77; 232 NW2d 306 (1975).

fact in finding guilt beyond a reasonable doubt". *People v Hampton,* 407 Mich 354, 366, 368; 285 NW2d 284 (1979), *Jackson v Virginia,* 443 US 307, 315-316; 99 S Ct 2781, 2787; 61 L Ed 2d 560, 571 (1979). In assessing defendant's claim, we must take the evidence in the light most favorable to the prosecution. See *People v Walker,* 93 Mich App 189, 196; 285 NW2d 812 (1979), and cases cited therein.

Premeditation and deliberation are not readily proven by direct evidence, and may be inferred from all the surrounding circumstances of the killing. *People v Hoffmeister,* 394 Mich 155, 159; 229 NW2d 305 (1975), *People v Morrin, supra,* 331.

In *Morrin, supra,* 331-332, this Court considered several factors which are relevant to the issue of whether premeditation and deliberation exist in a particular case, including: (1) prior relationship of the parties that would tend to show motive, (2) acquisition of or positioning of a weapon in preparation for homicide, (3) the circumstances of the killing itself, and (4) the killer's post-homicide conduct. These factors will be discussed *seriatim.*

In the case at bar, defendant Griffin and Harmon had no prior relationship evincing a motive for the killing. The prosecutor acknowledged this fact in his closing argument:

"There is one strange twist or one, I guess, hole in this whole case, and that is motive. Why did he do it? I'd like to caution you to not confuse motive, or the reason why Jack Griffin killed Mr. Harmon, or the reason why he also tried to kill Mr. Norris with the elements of murder. The only two people that could tell us what might have gone on, what there might have been a motive for, would be, of course, Mr. Harmon who is dead and Mr. Griffin who doesn't remember. But the reason why or the motive is not an element that must be shown here. It helps to explain why this happened,

but if he did it—if he premediated [sic] it, formed the intent to kill these gentlemen, got in that truck and deliberately and willfully carried it out, whether we've been able to show you why he did that or not, he's guilty of first degree murder as the People have charged, and only for the provident fact that Mr. Norris was not also killed are we not talking about two charges of murder here, but only assault with intent to murder."

The pickup truck—the weapon used in the homicide—was neither acquired for nor positioned for the killing. Griffin did not drive the truck to the corn field, Norris did.

The circumstances of the killing itself were equivocal. Mr. Norris's testimony suggested that defendant had time to premeditate and deliberate before running into Harmon. At the same time, there is little, if any, doubt that defendant was severely intoxicated at the time of the incident. His blood alcohol level was .318 percent by weight, which is over three times the limit upon which a presumption of intoxication is based in Michigan. MCL 257.625a(1)(c); MSA 9.2325(1)(1)(c). Mr. Norris also testified as to defendant's intoxication. Even accepting the evidence in the light most favorable to the prosecution, this fact is a given.

Defendant's post-killing conduct does not tend to show the homicide was planned. Although Griffin's whereabouts are unaccounted for during a period of approximately one hour and a half, when Norris returned from the hospital defendant was standing by the side of his house. Murderers—particularly where premeditation and deliberation has occurred—normally do not remain about or immediately return to the scene of the crime where witnesses can see them.

Merely because there was time to premeditate

and deliberate, as there was here, does not mean that premeditation and deliberation actually occurred. Actual cogitation is necessary to satisfy this element of first-degree murder. *Hoffmeister, supra,* 161; LaFave & Scott, Criminal Law, § 73, pp 563-564. There is no specific length of time needed to satisfy the premeditation and deliberation element of first-degree murder; all that need be shown is that defendant had an interval of time—even a second—to subject the nature of his actions to a "second look". *People v Tilley,* 405 Mich 38, 45; 273 NW2d 471 (1979), *People v Meadows,* 80 Mich App 680, 691; 263 NW2d 903 (1977). It is difficult to imagine any type of intentional killing in which the defendant could not have had time to premeditate and deliberate. If proof of time to premeditate and deliberate were all that was required to establish first-degree murder, the only true distinction between that crime and second-degree murder would be that first-degree murder must be premised on an actual intent to kill, while second-degree murder might be premised on recklessness. This, however, does not reflect the state of the law.

While it is possible that defendant did premeditate and deliberate on his homicidal act, the evidence here is insufficient to establish this element beyond a reasonable doubt. As such, upon remand I would only allow defendant to be retried for second-degree murder on Count I.

The prosecution on appeal relies heavily on *People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973), for the proposition that the evidence of premeditation and deliberation presented in this case was sufficient. I first note that the Court in *Meier* applied the "any evidence" test for sufficiency now discredited by *Hampton, supra.* The *Meier* Court specifically held that only where

there is *no* evidence of premeditation is it improper to submit the charge to the jury. *Id.,* 192.

On the facts of *Meier,* the evidence of premeditation and deliberation was more compelling than is the case here. There, evidence of an argument between defendant and decedent was adduced. After decedent approached defendant the first time, it was suggested to the latter that he leave the bar where the killing occurred, but he declined. I have found no cases where this state's appellate courts have focused on whether there was sufficient time to premeditate and deliberate as the touchstone for determining if there was adequate evidence of premeditation and deliberation. In all the cases considering whether there was sufficient time to premeditate and deliberate, there was additional evidence tending to show actual premeditation and deliberation. See, *e.g., People v Tilley, supra, People v Horn,* 41 Mich App 755; 201 NW2d 107 (1972), *lv den* 388 Mich 793 (1972), *People v Vertin,* 56 Mich App 669; 224 NW2d 705 (1974), *People v Berthiaume,* 59 Mich App 451; 229 NW2d 497 (1975), *lv den* 394 Mich 788 (1975), *People v Livingston,* 63 Mich App 129; 234 NW2d 176 (1975), *People v Fields,* 64 Mich App 166; 235 NW2d 95 (1975), *lv den* 397 Mich 861 (1976), *People v Jesse Smith,* 81 Mich App 190; 265 NW2d 77 (1978), *People v Clay,* 91 Mich App 716; 283 NW2d 870 (1979), *lv den* 408 Mich 857 (1980), *Walker, supra, People v Moncure,* 94 Mich App 252; 288 NW2d 675 (1979).

Regarding defendant's final claim—that the defense of automatism should be recognized in Michigan—I note that this defense was not raised below. Consequently, I do not address this issue.

I would reverse and remand for retrial on the offenses of second-degree murder and assault with intent to commit murder.