PEOPLE v CULPEPPER

1. Witnesses—Criminal Law—Expert Witness—Credibility—Jury Question.

A jury is not bound to accept the testimony of the defendant's expert witnesses in a criminal case.

2. Criminal Law—Insanity—Trier of Fact—Judge—Jury—Evidence—Witnesses—Expert Knowledge—Psychiatrists—Jury Question.

A jury, or the judge if a jury is waived, is the ultimate trier of the fact of criminal insanity; the expert knowledge of psychiatrists can be of assistance to them in arriving at their determination, but they can conclude that the testimony of experts called by both sides did not constitute evidence of a defendant's insanity at the time of the offense charged.

3. Criminal Law—Evidence—Anti-Social Conduct—Sanity—Defense of Insanity.

Testimony of a defendant's prior anti-social conduct is ordinarily inadmissible, but it is admissible for the purpose of determining the question of sanity, once the defendant has raised a defense of insanity.

4. Appeal and Error—Criminal Law—Instructions to Jury—Objections—Failure to Object.

A party may not assign as error the giving of an instruction where he has failed to object to the instruction and where he

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 2, 183.

[2] 31 Am Jur 2d, Expert and Opinion Evidence § 186.

[3] 29 Am Jur 2d, Evidence §§ 158, 203, 242, 243, 245, 1177.
Presumption of continuing insanity as applied to accused in criminal case. 27 ALR2d 121.

[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
75 Am Jur 2d, Trial §§ 906, 909.

[5, 6] 40 Am Jur 2d, Homicide §§ 246, 263, 439.
Homicide: presumption of deliberation or premeditation the circumstances attending the killing. 96 ALR2d 1435.

[5] 40 Am Jur 2d, Homicide § 472.

has professed satisfaction with the charge to the jury (GCR 1963, 516.2).

5. HOMICIDE—MURDER—FIRST-DEGREE MURDER—PREMEDITATION—IN-FERENCES—CIRCUMSTANCES SURROUNDING KILLING—SECOND LOOK—TRIER OF FACT.

Premeditation can be reasonably inferred from the circumstances surrounding a killing; a defendant may not be found guilty of first-degree murder if he did not have an opportunity to subject the nature of his response to a "second look" or reflection, *i.e.,* one cannot instantaneously premeditate a murder; a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding a killing; the trier of fact may not consider a charge of first-degree murder where it is factually clear that there is no evidence of premeditation.

6. HOMICIDE—MURDER—FIRST-DEGREE MURDER—EVIDENCE—PREMEDITATION—JURY QUESTION—INFERENCES—SUFFICIENT TIME LAPSE—SECOND LOOK.

The facts and circumstances presented provided a basis from which premeditation could reasonably be inferred, and, consequently, a court properly submitted to the jury a first-degree murder charge arising out of the fatal shooting of a security guard where the defendant knew that a plant foreman had called the security guard in order to send the defendant home because of his drinking on the job, the defendant then armed himself and made clear his intention to kill rather than be sent home, the security guard arrived and the foreman pointed out the defendant as the one to be escorted from the plant, and the defendant then raised his weapon and shot the foreman and wheeled and shot the security guard; there was a sufficient time lapse to provide the defendant with an opportunity for a "second look".

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 January 7, 1975, at Lansing. (Docket Nos. 16660, 16690.) Decided March 10, 1975.

William O. Culpepper was convicted of first-degree murder and second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, *Jerome D. Farmer II,* Chief Assistant Prosecuting Attorney, and *Lynwood E. Noah,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J., and McGREGOR and D. F. WALSH, JJ.

McGREGOR, J. Defendant was tried before a jury on two charges of first-degree murder, MCLA 750.316; MSA 28.548. Defendant interposed a defense of insanity. Following a nine-day trial, at which at least 40 witnesses were called to testify, the jury found the defendant guilty of first-degree murder for the killing of Jack D. Goebel, and second-degree murder for the killing of John Rich. Defendant was sentenced to life imprisonment and 20 to 40 years imprisonment, respectively, for these offenses. He appeals as of right.

The defendant, Mr. Goebel and Mr. Rich were all employees of the Ford Motor Company and worked in the same plant. Mr. Goebel was defendant's foreman; Mr. Rich was a security guard.

On the night of the shootings, Mr. Goebel summoned a security guard, Mr. Rich, and was going to send the defendant home, because defendant was drinking on the job. Defendant knew this and witnesses testified that he had obtained a gun, loaded it, and stated, "If he is going to send me home, I'm going to shoot him". Prior to the fatal shootings, Mr. Goebel had reprimanded the defendant on several occasions because of defendant's drinking. Witnesses testified that defendant

had threatened to kill Mr. Goebel following these previous reprimands.

There were numerous witnesses to the actual shootings. Their testimony reveals that Mr. Rich, the security guard, drove up on his cart to Mr. Goebel, who pointed to the defendant. The defendant walked up to the men, pulled the gun, and fired point-blank, first fatally wounding Mr. Goebel, and then Mr. Rich. Some of the witnesses then wrestled the defendant to the floor and disarmed him. When the defendant was on the floor, he said, "I'm okay, let me up".

Following the defendant's arrest, he was escorted to a hospital where he consented to a blood-alcohol test. Analysis showed that the blood contained 0.11% alcohol.

At trial, both the defense and the prosecution called expert witnesses on the issue of the defendant's insanity. As is frequently the case, the experts called by the defense gave testimony favorable to the defense and the expert called by the prosecution gave testimony favorable to the prosecution. The defendant, however, claims that the trial court erred in denying its motion for directed verdict of acquittal, based on the allegation that the prosecution had failed to prove sanity beyond a reasonable doubt.

We find no error. The jury was not bound to accept the testimony of the defendant's expert witnesses. In *People v Martin,* 386 Mich 407, 422; 192 NW2d 215 (1971), our Supreme Court stated:

"It should never be forgotten that it is the jury (or the judge if a jury is waived) who is the ultimate trier of the fact of criminal insanity. In most cases, the expert knowledge of psychiatrists can be of assistance to the jury or judge in arriving at their determination, but under our system of justice that ultimate determi-

nation rests with the court or a defendant's jury of his peers."

The jury heard the testimony of experts called by both sides and concluded that the testimony did not constitute evidence of defendant's insanity at the time of the offense. We find no error in that conclusion. *People v McBride,* 55 Mich App 234; 222 NW2d 195 (1974).

Defendant next alleges as error that the prosecutor, in his closing argument, mischaracterized the testimony of the two expert witnesses presented by the defense. The defendant also claims that the prosecutor made other prejudicial and improper comments during his closing argument.

The remarks of the prosecutor, about which defendant here complains for the first time, were not so prejudicial as to have resulted in manifest injustice and may not now be assigned as a basis for reversible error. *People v Pacely,* 51 Mich App 67; 214 NW2d 561 (1974). Further, even if the defendant had objected to the prosecutor's comments, we find that the court's instructions dissipated any prejudice created by the prosecutor's argument and cured any reversible error.

Defendant also claims that the trial court erred in admitting evidence of prior acts of misconduct by the defendant and in failing to give a limiting instruction.

While testimony of prior anti-social conduct is ordinarily not admissible, such testimony is admissible for the purpose of determining the question of sanity, once defendant has raised such a defense. *People v Musser,* 53 Mich App 683; 219 NW2d 781 (1974), *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968). Such is the situation in the case at bar. Further, we note that the trial court

specifically instructed the jury that the testimony of any prior anti-social conduct of the defendant was to be considered only as bearing upon the issue of insanity or sanity of the defendant at the time of the alleged offenses. We find no reversible error.

The defendant also claims that the court gave an erroneous instruction on intoxication. Defendant not only failed to preserve this issue for appeal by objecting to the instruction, but, in fact, professed satisfaction with the charge. We, therefore, perceive no reversible error. GCR 1963, 516.2.

Lastly, defendant states that the trial court erred in denying a motion for directed verdict of acquittal because of the failure of the prosecution to prove premeditation in the killing of Mr. Rich.

The cases of *People v Gill,* 43 Mich App 598; 204 NW2d 699 (1972), and *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), are relied on heavily by the defendant as advancing his view that evidence of premeditation was lacking in the instant case. We do not agree.

In the case of *People v Meier,* 47 Mich App 179, 191–192; 209 NW2d 311, 318 (1973), this Court stated:

"Our own answer to the question of the appropriate rule to follow as to what constitutes premeditation in a first-degree murder case is not a definition. Rather, it is a reaffirmation of the role of the trier of fact in deciding the degree of guilt of an accused under the following established principles:

"(1) Premeditation can be reasonably inferred from the circumstances surrounding the killing;

"(2) A defendant may not be found guilty of first-degree murder if he did not have an opportunity to subject the nature of his response to a second look or reflection, *i.e.,* one cannot instantaneously premeditate a murder;

"(3) A sufficient time lapse to provide an opportunity for a 'second look' may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing;

"(4) Where it is factually clear that there is *no* evidence of premeditation, the trier of fact may not consider a charge of first-degree murder.

"Attempting to further clarify this 'definition' in the past has, we believe, led to an invasion by the appellate courts into areas rightfully left to the trial court in its factfinding processes * * * ." See also *People v De-Ruyscher,* 29 Mich App 515; 185 NW2d 561 (1971).

In the case at bar, the evidence clearly demonstrates that the defendant knew that his foreman, Mr. Goebel, had called a security guard, Mr. Rich, in order to send the defendant home because of his drinking. The defendant then armed himself and made clear his intention to kill rather than be sent home. Despite the efforts of his coworkers to talk him out of such a reaction, the defendant made good his threat. When Mr. Rich arrived, Mr. Goebel pointed the defendant out as the one to be escorted from the plant. The defendant then raised his weapon with fatal results. The many witnesses to the shooting stated that the defendant first shot Mr. Goebel and then wheeled and shot Mr. Rich.

There was a sufficient time lapse between the moment the defendant was informed that a security guard had been called and that he was being sent home, and the moment he fatally shot both Mr. Goebel and Mr. Rich, to provide the defendant with an opportunity for a "second look". We hold that the facts and circumstances presented provide a basis upon which premeditation can reasonably be inferred. Consequently, the trial court did not err by submitting the first-degree murder charge, arising out of the fatal shooting of Mr. Rich, to the jury.

Affirmed.