## PEOPLE v CRAMER

Docket No. 78-4254. Submitted February 14, 1980, at Lansing.—Decided April 23, 1980. Leave to appeal applied for.

Edward N. Cramer, Jr., was convicted of first-degree felony murder, Menominee Circuit Court, V. Robert Payant, J. During the trial evidence was admitted, over the defendant's objection, to show that the defendant had committed an assault earlier the same evening in an incident separate from the offense with which he was charged. The trial court acknowledged the possible prejudice to the defendant, but found the evidence probative and relevant to show the state of mind of the defendant. The trial judge instructed the jury concerning the limited purpose for which the testimony could be considered. Defendant appeals contending the evidence was inadmissible because it was not probative of defendant's motive, scheme or plan, or the absence of mistake or accident, and its prejudicial impact outweighed its probative value. *Held:*

1. It was not error to admit evidence of the defendant's other bad acts than those charged, under the "similar acts" doctrine, where the evidence was substantial, relevant, and not unduly prejudicial to a matter which was material and in controversy in the case.

2. Admission of testimony concerning the defendant's activities two to four hours before the homicide for which he was on

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 320 *et seq.*

[2, 4] 40 Am Jur 2d, Homicide §§ 115, 292, 293.

[3] 40 Am Jur 2d, Homicide § 310.

[4] 40 Am Jur 2d, Homicide §§ 314, 493.

[5] 40 Am Jur 2d, Homicide § 114 *et seq.*

[6] 40 Am Jur 2d, Homicide § 295.

Modern status of the rules as to voluntary intoxication as defense to criminal charge. 8 ALR3d 1236.

When intoxication deemed to be involuntary so as to constitute a defense to criminal charge. 73 ALR3d 195.

[7] 81 Am Jur 2d, Witnesses §§ 187, 188, 199.

Persons other than client or attorney affected by, or included within, attorney-client privilege. 96 ALR2d 125.

trial was not error where (1) there was substantial evidence that he had actually perpetrated the act sought to be introduced, (2) the challenged evidence was introduced to establish an issue material to the outcome of the case, the defendant's state of mind at the time of the charged offense, which was the only matter at issue at trial, since the defendant admitted killing his victim, and (3) the trial judge recognized the materiality of the evidence.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — OTHER BAD ACTS — RULES OF EVIDENCE.

The language of the rule governing the admission of evidence of other bad acts of a defendant makes clear that the evidence may be admitted for purposes other than to prove the character of the defendant and the list of possible purposes for admission found in the rule is illustrative, not exhaustive (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — DEFENSES — INSANITY — DIMINISHED CAPACITY.

Any and all conduct of an accused is admissible as evidence where the defense of insanity or diminished capacity is raised, and, in a homicide trial, evidence of a prior bad act of the defendant, preceded and followed by other evidence illustrating the defendant's activities, conduct and routine on the night of the crime, established the defendant's state of mind during the time leading up to and subsequent to the unwitnessed killing for which he was being tried and is admissible as relevant to a material issue.

3. HOMICIDE — EVIDENCE — OTHER BAD ACTS — PREJUDICE — FAIR TRIAL.

A trial court did not abuse its discretion by admitting evidence of a defendant's prior bad act and finding it to be more probative than prejudicial where it carefully balanced the factors and where the evidence directly tended to establish the defendant's state of mind at the time of the killing and was necessary to provide a complete picture of the defendant's conduct, activities and behavior on the night of the crime and was clearly probative of a material issue and important to the jury's determination of the defendant's state of mind.

4. HOMICIDE — EVIDENCE — OTHER BAD ACTS — PREJUDICE — INFLAMMATORY TESTIMONY — INSTRUCTIONS TO JURY.

It was not an abuse of discretion for a trial judge to admit testimony of other bad acts in a murder trial where he mini-

mized the possibility for confusion of the issues or misleading the jury in admitting the evidence of other bad acts by giving specific instructions at the end of the testimony and at the close of trial on the permissible use of the testimony.

5. HOMICIDE — DEFENSES — INSANITY — NOTICE OF INSANITY DEFENSE.

Filing a notice of insanity defense by the defendant provides notice that the issue of the defendant's sanity is likely to be controverted at trial.

6. HOMICIDE — DEFENSES — INSANITY — PLEA OF NOT GUILTY BY REASON OF INSANITY.

A defendant's plea of not guilty by reason of insanity places in issue subjective factors of the defendant's emotion and mind which, taken together with his success in obtaining a continuance prior to trial in order to undergo an examination on the issue of his sanity at the time of the offense as well as the questioning of a prosecution witness as to the defendant's sobriety at the time of an alleged assault on her occurring several hours prior to the crime charged, places the defendant's state of mind in dispute.

7. CRIMINAL LAW — ATTORNEY AND CLIENT — PRIVILEGE — TELEPHONE CONVERSATIONS.

A telephone conversation between a defendant and his girl friend in which the defendant simply expresses his desire to see, among others, his attorney and, thereafter, emotionally admits his complicity in the charged offense cannot be construed as a principal-agent relationship falling within the attorney-client privilege.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Ian J. Redpath,* Prosecuting Attorney (by *Thomas C. Nelson,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Ronald J. Bretz,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and ALLEN and M. J. KELLY, JJ.

PER CURIAM. On June 19, 1978, defendant was convicted by a jury of first-degree felony murder. MCL 750.316; MSA 28.548. He was sentenced to mandatory life imprisonment without parole and appeals as of right.

During his opening statement in the trial on the charge of first-degree murder, the prosecutor stated that he would present, *inter alia,* evidence to show that defendant had committed an assault on another woman, Karen Erickson, earlier the same evening that defendant killed his victim, Laura Allinger. Defense counsel did not object to this remark but, after reserving his opening statement, objected outside the presence of the jury to the introduction of any testimony concerning the alleged assault on Karen Erickson:

"This incident, in the opinion of the defense, has absolutely nothing to do with the current charge involving the charge of murder * * * It is clearly a separate incident and there is no tie-in that can be seen by the defense with the present situation * * * [W]e would object to the incidents involving Karen Erickson being utilized as evidentiary matters in the trial of this case because of the fact that they are not relevant or material, and even, if so, are too highly prejudicial to be utilized as evidence."

The prosecutor responded that evidence of the prior assault would show a "plan, scheme, motive, purpose, for the offense charged". The trial court overruled the defense objection and found the evidence of the assault admissible. In so ruling, the lower court judge acknowledged the possible prejudice to defendant but felt that the applicable statute and court rule had been satisfied. In addition, the trial judge noted that he would give a limiting instruction at the time the evidence was admitted and would also consider reversing his

ruling, "because of other intervening things that may come to my attention, but as of this time, I am satisfied that the prosecution may use such evidence as to what happened earlier that evening".

The following day, defense counsel renewed his motion to exclude evidence of defendant's prior assault on Karen Erickson. The trial judge again rejected the motion and ruled that the evidence was admissible pursuant to MRE 404(b) and 403.

"I find that the evidence is clearly probative. It clearly is relevant—it occurred within a relatively short period of time. It would go, certainly, to the element of the state of mind of the Defendant, and I understand that the state of mind of the Defendant is indeed going to be a significant issue in this case."

Alternatively, the judge held that the evidence "could be considered part of the res gestae".

"It was certainly close in time to the offense charged in the information. The whereabouts of the Defendant during the evening in question, the other contacts that he had made during the evening in question, all seem to have a probative value which should be able to be considered by the jury."

Subsequently, Karen Erickson testified during the prosecutor's case in chief. She stated that while living with her cousin, Rebecca Badge, she went to sleep on the evening of September 28, 1977, to be awakened one hour later by someone with the smell of alcohol on his breath lying in bed next to her. Upon realizing that the person in bed with her was not her cousin, she became startled and jumped out of bed. The other person also jumped out of bed, grabbed Miss Erickson by the shoulders and warned her to "cool it, Becky".

Miss Erickson testified that she told the intruder that she was Becky's cousin, that the intruder threatened her with a knife and that he told her to stay in the bedroom and not to turn on any lights. Eventually, after taking a small amount of money from the witness's purse and a bread knife from the kitchen, the intruder fled the premises in a "green or brown" Chrysler automobile. Miss Erickson was able to identify the license plate number of the vehicle and subsequently identified the defendant's voice as that of the intruder. The car was later determined to be that of defendant's fiancée. It was undisputed that defendant drove the car on the night in question.[1]

At the conclusion of Miss Erickson's testimony, and again in its final charge to the jury, the trial court instructed the jury concerning the limited purpose for which the testimony could be considered in accordance with CJI 4:10:01.

The main issue on appeal is whether the trial judge abused his discretion by admitting evidence of an allegedly similar act committed by the defendant two to four hours before the murder of Laura Allinger. Defendant contends that the evidence was inadmissible because it was not probative of defendant's motive, scheme or plan, or the absence of mistake or accident. In addition, defendant claims that the prejudicial impact of this evidence outweighed its probative value. The prosecution counters by arguing that, where proof of defendant's intent rests solely on circumstantial evidence in a case of first-degree murder, it is not error to admit evidence of a prior criminal inci-

---

[1] During his testimony, defendant admitted that he had been at the Badge residence on September 28, 1977, but claimed that he was looking for Connie Beauchamp. He testified that he "took off" when the girl present "got all excited" and disclaimed any memory of a knife and stated that he did not take anything from the premises.

dent reflective of defendant's state of mind which was part of an uninterrupted pattern of behavior and which occurred a short time prior to the homicide.

Evidence of defendant's assault on Karen Erickson was admitted on the authority of MRE 404(b), which supersedes the long-standing similar acts statute found at MCL 768.27; MSA 28.1050. MRE 404(b) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible *for other purposes, such as* proof *of* motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged." (Emphasis supplied.)

Generally, evidence tending to show that a defendant has committed crimes or bad acts other than those charged is inadmissible because its probative value is outweighed by the likelihood of impermissible prejudice, preventing an objective determination of the disputed factual issue. *People v Flynn,* 93 Mich App 713; 287 NW2d 329 (1979), *People v Bates,* 91 Mich App 506, 510; 283 NW2d 785 (1979), *People v Wilkins,* 82 Mich App 260, 265; 266 NW2d 781 (1978), *People v Gibson,* 66 Mich App 531, 536; 239 NW2d 414 (1976), and authorities cited therein.

"There are, however, instances in which such evidence is admissible to establish other, *legally recognized* matters, so long as the evidence is not offered as mere circumstantial evidence to prove the bad character of

the defendant, and hence, the probability of his guilt for the crime charged. Thus, if evidence of other bad acts of the defendant is being introduced for some purpose *other than* to raise the inference of a probability that the accused committed the crime charged, the rule excluding the evidence is simply inapplicable. *People v Spillman,* 399 Mich 313, 319; 249 NW2d 73 (1976). It is for this reason that the law recognizes exceptions to the general exclusionary rule regarding evidence of defendant's prior bad acts or crimes." *People v Flynn, supra,* 718.

MRE 404(b) and the similar acts statute are perfect examples of attempts by the Supreme Court and Legislature to codify both the rule and some of its exceptions.

However, the list of exceptions to the general rule found in MRE 404(b) is not exhaustive. No mechanical or fixed rule can encompass all of the possible reasons for which evidence of the defendant's other bad acts might be admissible at the trial on an unrelated charge. Indeed, the language used in MRE 404(b) makes clear that the evidence may be admissible for purposes other than to prove the character of a person in order to show that he acted in conformity therewith. The list of those "other purposes", *e.g.,* motive, opportunity, intent, preparation, etc., must be viewed as examples, and not the exclusive grounds on which such evidence is rendered admissible as an exception to the general rule. *People v Fisher,* 77 Mich App 6, 11; 257 NW2d 250 (1977), *lv den* 402 Mich 811 (1977). See, *e.g., People v Nawrocki,* 376 Mich 252, 255; 136 NW2d 922 (1965). In short:

"The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed

the crime on trial because he is a man of criminal character." McCormick on Evidence (2d), § 190, p 447.

Bearing in mind the high degree of prejudice inherent in evidence of an accused's other bad acts, our courts have traditionally required that the prosecution meet somewhat higher standards of admissibility for such evidence than is ordinarily required for other types of evidence. The leading case on point is *People v Wilkins,* 82 Mich App 260, 267-271; 266 NW2d 781 (1978), *lv den* 406 Mich 857 (1979). In essence, to admit evidence under the so-called "similar acts" doctrine it is necessary that the evidence of the defendant's other bad acts be substantial, relevant, and not unduly prejudicial to a matter which is material and in controversy in the case. While these principles (of evidentiary law) are readily applicable to the admission of any type of proffered evidence (see, *e.g.,* MRE 401, 403), they take on a special meaning when the evidence sought to be admitted in a criminal trial pertains to instances of bad or criminal acts of the defendant for which he is not presently on trial.

Applying the foregoing principles to the instant case, we find that the admission of testimony concerning defendant's activities at the Erickson residence two to four hours before the homicide for which he was on trial, was not erroneous.

First, there was substantial evidence that the defendant actually perpetrated the bad act sought to be introduced under the standards set forth in *Wilkins, supra,* 267, and *People v Cook,* 95 Mich App 645; 291 NW2d 152 (1980). Defendant does not challenge the sufficiency of this evidence on appeal.

Second, the challenged evidence was introduced

to establish an issue material to the outcome of the case. *Wilkins, supra,* 268. The purpose for which defendant's bad act was offered by the prosecution was, *inter alia,* to establish defendant's state of mind at the time of the charged offense.[2] This issue was, essentially, the only matter in controversy in the case since defendant admitted killing his victim on the night in question.[3] The trial judge recognized the materiality of the proffered evidence, ruling:

"It would go, certainly, to the element of the state of mind of the Defendant, and I understand that the state of mind of the Defendant is indeed going to be a significant issue in this case."

Defendant challenges the above ruling by the trial judge, claiming that, because defense counsel reserved his opening statement at trial until after

[2] Whether or not evidence of defendant's activities at the Erickson residence is *probative* and *not unduly prejudicial* to the matter for which it is submitted is a question of logical (MRE 401) and legal (MRE 403) relevancy, not materiality. See *People v Stander,* 73 Mich App 617, 624-625; 251 NW2d 258 (1977). The question of materiality precedes the issue of relevancy because, even though evidence may be probative of a specific issue or proposition, it is still rendered inadmissible as *immaterial,* if that issue or proposition is not controverted or "of consequence to the determination of the action". MRE 401, see *People v Rustin,* 406 Mich 527, 530-531; 280 NW2d 448 (1979).

[3] Defense counsel later abandoned the insanity defense, preferring instead to rely on a defense of diminished mental capacity, *i.e.,* not consciously aware of the full nature and extent of his conduct, brought about by inherent personality disorders and severe alcohol and drug intoxication on the night of the crime. *People v Fields,* 64 Mich App 166; 235 NW2d 95 (1975), *lv den* 397 Mich 861 (1976). Beside arguing to the jury that the evidence presented by both sides failed to establish that defendant premeditated and deliberated in killing his victim, defense counsel argued that the defendant was, due to his diminished mental capacity, unable to form the specific intent necessary to complete either first- or second-degree murder or the underlying felonies of larceny or kidnapping, on which the first-degree felony-murder charge was based. Defense counsel argued that defendant "is very much like a V-8 automobile running on four cylinders".

the prosecution had completed its case in chief, the matter which the evidence purportedly tended to prove was not yet in dispute. Defendant acknowledges that, ultimately, the only controverted issue at trial was his state of mind at the time of the killing but contends that, since the matter had not been raised by the defense "in opening statement, by cross-examining prosecution witnesses or by presenting affirmative evidence" on the issue, the prosecution should have waited until after the defense rested to offer the Erickson testimony as rebuttal evidence. *Wilkins, supra,* 268-269. During oral argument before this Court, it was pointed out to defendant's appellate counsel that, prior to trial, counsel for the defendant had filed a notice of insanity pursuant to MCL 768.20a(1); MSA 28.1043(1)(1). At that point, appellate counsel conceded the materiality of the proposed evidence. This concession is supported by law and reason.

In *People v Oliphant,* 399 Mich 472, 489; 250 NW2d 443 (1976), and *People v Major,* 407 Mich 394, 399; 285 NW2d 660 (1979), the Supreme Court quoted with approval from McCormick on Evidence (2d ed), § 185, p 434, concerning when it can be said that a certain proposition is a matter "in issue":

"As to what is 'in issue', that is, within the range of the litigated controversy, we look mainly to the pleadings, read in the light of the rules of pleading and controlled by the substantive law."

Applying this standard to the case at bar we observe that, as a matter of substantive law, the mere filing of a notice of insanity defense does not overcome the presumption of the defendant's sanity sufficient to take the issue to the jury. *People v Woody,* 380 Mich 332, 338; 157 NW2d 201 (1968),

*People v Livingston,* 57 Mich App 726, 733; 226 NW2d 704 (1975). Accordingly, the prosecution is not automatically required to establish defendant's sanity beyond a reasonable doubt. Nonetheless, we conclude that such a pleading provides notice that the issue is likely to be controverted at trial because it sharpens in advance the issue of this special defense. McCormick on Evidence (2d ed), § 190, p 452, fn 54.

In addition to filing the notice of insanity defense, at his arraignment on the open charge of murder, defendant entered a plea of not guilty by reason of insanity. This plea "places in issue subjective factors of an individual's emotion and mind". *People v Martin,* 386 Mich 407, 427; 192 NW2d 215 (1971), *cert den sub nom Lewis v Michigan,* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972). These factors, combined with defense counsel's success in obtaining a continuance prior to trial for the purpose of allowing the defendant to undergo examination at the Center for Forensic Psychiatry on the issue of his sanity at the time of the charged offense, along with counsel's cross-examination of a prosecution witness concerning defendant's state of sobriety prior to the assault on Miss Erickson (which examination occurred before she testified about the assault), persuade us that the defendant's state of mind was sufficiently in dispute at the time evidence of the episode at the Erickson residence was introduced at trial. Accordingly, defendant's state of mind was material and "in issue" in the instant trial.

Third, evidence of the defendant's activities and behavior at the Erickson residence was probative of defendant's state of mind at the time of the homicide two to four hours later in the evening; the evidence was logically relevant to defendant's

state of mind at the time of the charged offense. In brief, the issue in dispute is whether the tendered evidence had "any tendency to make the existence of a fact that is of consequence to the determination of the action more probable * * * than it would be without the evidence". MRE 401, *People v Becker,* 300 Mich 562, 565; 2 NW2d 503 (1942), *People v Surles,* 29 Mich App 132, 138; 185 NW2d 126 (1970).

Defendant answers the issue in the negative, contending that there were no "special circumstances" or "connections" between the bad acts and the offense charged, as required by *Wilkins, supra,* 267, and *Major, supra,* 398-400.

Evidence of defendant's actions just prior to, during and subsequent to the crime charged was "helpful in throwing light" upon defendant's state of mind at the time of the offense. *Becker, supra, Surles, supra.* The logical relevancy and probative value of this circumstantial evidence is most persuasively argued in 2 Wigmore, Evidence (Chadbourn Rev), § 228, p 9:

"Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of normality. The mode of operation of the mind is ascertainable from the conduct of the person in question, *i.e.,* from the effect produced by his surroundings on his mind when responding by action to those surroundings. Virtually, then, the mind is one, while the surroundings are multifold; and the mode of operation cannot be ascertained to be normal or abnormal except by watching the effects through a multifold of causes. On the one hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent.

"The first and fundamental rule, then, will be that *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of

conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue."

Michigan decisions are in accord with the rule that any and all conduct of the accused is admissible as evidence where the defense of insanity or diminished capacity is raised:

"Testimony of prior arrests, convictions, assaultive and antisocial conduct, ordinarily completely inadmissible as bearing on the general guilt or innocence of the accused of the offense charged, became material and admissible as bearing on the issue of his sanity." *Woody, supra,* at 338.

*People v Compian,* 38 Mich App 289, 296-297; 196 NW2d 353 (1972), *lv den* 387 Mich 790 (1972), *People v Musser,* 53 Mich App 683, 686; 219 NW2d 781 (1974), *lv den* 392 Mich 798 (1974), *People v Culpepper,* 59 Mich App 262, 266-267; 229 NW2d 407 (1975), *lv den* 399 Mich 854 (1977), *People v Hammack,* 63 Mich App 87, 93; 234 NW2d 415 (1975), *People v Clay,* 91 Mich App 716, 729; 283 NW2d 870 (1979). And see *People v Zabijak,* 285 Mich 164, 185-186; 280 NW 149 (1938), *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947).

The evidence of defendant's activities at the Erickson residence was preceded and followed by other evidence introduced by the prosecution illustrating the defendant's activities, conduct, and routine on the night of the crime. The combined effect of this evidence was to establish defendant's state of mind during the time leading up to and subsequent to the unwitnessed killing of Laura Allinger. As such, the evidence rendered the fact of defendant's sanity and mental capacity at the time of the charged offense more probable than it

would be without the evidence. In concluding that the challenged evidence was logically relevant as bearing on a material issue in controversy at trial, we quote from a decision of the Nevada Supreme Court in which the same issue was raised:

"It is true, as the appellant suggests, that Nevada follows the rule of exclusion concerning evidence of other offenses. We exclude such evidence unless relevant to prove the commission of the crime charged. Tucker v State, 82 Nev 127, 412 P2d 970 (1966), and the many Nevada cases therein cited. That rule, however, does not touch the issue here presented. We are not concerned in this case with proving the commission of the homicide. It is admitted that the defendant killed Hawthorne. He sought to escape legal responsibility for the homicide because of insanity. When that defense is interposed, any words or conduct shedding light on that issue are admissible, even though they disclose other criminal acts of the defendant. Brothers v State, [236 Ala 448]; 183 So 433 (1938); Grammer v State, [239 Ala 633]; 196 So 268 (1940); Vol 2, Wigmore, Evidence, § 228 (3d ed 1940)." *Mears v State,* 83 Nev 3, 9-10; 422 P2d 230, 234 (1967), *cert den* 389 US 888; 88 S Ct 124; 19 L Ed 2d 188 (1967), *reh den* 389 US 945; 88 S Ct 299; 89 L Ed 2d 303 (1967).

In reaching this conclusion, we are not unmindful of the special requirements of relevancy imposed by the Supreme Court in *Major, supra,* 398-400.[4]

---

[4] *Major, supra,* 398, states that before evidence of *similar* bad acts of defendant is admissible, the prosecution must establish:

"1) that the manner in which the criminal act in question or some significant aspect of it was performed bore certain distinguishing, peculiar or special characteristics;

"2) that certain specific similar acts, performed contemporaneously with or prior to or subsequently to the act in question bore the same distinguishing, peculiar or special characteristics; * * *."

See McCormick, Evidence (2d ed), § 190, p 449. However, review of the various authorities decided since *Wilkins, supra,* and *Major, supra,* persuades us that neither reason nor precedent requires that

Fourth, we find that the trial court did not abuse its discretion in ruling that evidence of the prior bad act was more probative than prejudicial. MRE 403, *People v Duncan,* 402 Mich 1, 14; 260 NW2d 58 (1977), *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973). In balancing prejudicial effect against probative value, the trial judge:

"must balance many factors including: the time necessary for presenting the evidence and the potential for delay; how directly it tends to prove the fact in support of which it is offered; whether it would be a needless presentation of cumulative evidence; how important or trivial the fact sought to be proved is; the potential for confusion of the issues or misleading the jury; and whether the fact sought to be proved can be proved in another way involving fewer harmful collateral effects." *Oliphant, supra,* 490. See also *Wilkins, supra,* 270-271.

Weighing these factors on appeal we cannot conclude that the probative value of the evidence was "substantially outweighed by the danger of unfair prejudice". MRE 403. Only three witnesses, including Karen Erickson, testified concerning the defendant's intrusion at her residence on the night of the killing. In relation to the testimony of the other 50 or more witnesses who testified at trial, the amount of time necessary for presenting this evidence was minimal. In addition, as noted above, this evidence, combined with the evidence accounting for defendant's other activities on the night of the crime, directly tended to establish defendant's state of mind at the time of the killing. Moreover,

---

the prosecution establish the existence of "distinguishing, peculiar or special characteristics" of either the bad acts or the charged offense where they are dissimilar or incongruous. As such, this aspect of *Major* is simply inapplicable to the case at bar. See McCormick, *supra,* 452.

the challenged testimony was not a "needless presentation of cumulative evidence". Rather, it was necessary in providing a complete picture of the defendant's conduct, activities and behavior on the night of the crime.[5] Absent this evidence, the jury would have been given only a partial depiction of defendant's activities when, in fact, those activities could be accounted for by reference to the Erickson testimony. Further, the fact sought to be proved (i.e., defendant's activities at the Erickson residence), while not critical to the prosecution's case, was clearly probative of a material issue and therefore important to the jury's determination of defendant's state of mind. Finally, we recognize the potentially inflammatory impact of the testimony portraying defendant as a burglar, assaulter and thief in a trial for murder.[6] However, the trial judge minimized the possibility "for confusion of the issues or misleading the jury" by giving specific instructions both at the end of Miss Erickson's testimony and at the close of trial on the permissible uses of the testimony.

Accordingly, we find no abuse of discretion by the trial judge in allowing the bad acts testimony to be presented to the jury in this case.

Defendant raises one other issue on appeal, contending that the trial court erred in allowing

---

[5] However, contrary to the trial judge's ruling, this evidence was not admissible on its own merits under the "res gestae" rule because it was not "an inseparable part of the whole deed for which defendant is charged". Flynn, supra, 93 Mich App 713, 719. Nor was the episode at the Erickson residence "inextricably related" to the subsequent killing of Laura Allinger. People v Delgado, 404 Mich 76; 273 NW2d 395 (1978).

[6] Still, this impact is not as serious as where the other bad act shows defendant as being engaged in a continuing course of criminal conduct of the same kind. In those cases, the jury might conclude, albeit impermissibly, that "if he did it before he probably did it this time". Here, the worst possible portrayal of defendant is that he is, in general, a man with a bad character and criminal propensities. People v Matthews, 17 Mich App 48, 52; 169 NW2d 138 (1969).

the defendant's girl friend to testify to a conversation she had with the defendant while he was awaiting trial:

"A. He (defendant) told me he wanted me to get ahold of his lawyer, and that he wanted to see his lawyer and his mother and father and me that day.

"Q. Did he say anything concerning the crime itself?

"A. Yeah, he was really upset, and he started cryin', and he says something about that he could—he was starting—things were startin' to come back, and he could remember, and he started crying and said that it was an—he said, 'It was an accident, honey.' And he was crying."

Appellant argues that his conversation was protected by the attorney-client privilege since she was acting as the defendant's agent for the purpose of contacting the defendant's attorney, who was 90 miles away.

We fail to see how a telephone conversation between the defendant and his girl friend in which the defendant simply expresses his desire to see, among others, his attorney and thereafter emotionally admits his complicity in the charged offense can be construed as a principal-agent relationship falling within the attorney-client privilege. The cases cited by appellant are distinguishable and, therefore, inapposite. Compare, *People v Hilliker,* 29 Mich App 543, 548; 185 NW2d 831 (1971).

Affirmed.